United States District Court
Southern District of Texas

**ENTERED**

May 12, 2016

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ELIZABETH AUSTIN RICH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-15-1439 |
| | § | |
| TEXAS DEPARTMENT OF | § | |
| CRIMINAL JUSTICE, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

Pending before the court[1] is Plaintiff Elizabeth Austin Rich's ("Plaintiff") Motion for Referral and for Relief (Docs. 26, 32) and Defendant Texas Department of Criminal Justice ("TDCJ")'s Motion to Dismiss (Doc. 31). The court has considered the motion, all relevant filings, and the applicable law. For the reasons set forth below, the court **DENIES** Plaintiff's motions and **GRANTS** TDCJ's motion.

## I.  Case Background

Plaintiff filed this action against TDCJ on December 18, 2014, alleging employment discrimination under the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination Act of 1967 (the "ADEA") after she resigned her position at TDCJ after seventy-two days of training.

### A.  Factual Background

---

[1]    The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docs. 28-29.

Plaintiff was hired by TDCJ in March 2014 in Tyler, Texas.[2] As part of the hiring process, Plaintiff was given a signing bonus.[3] On March 5, 2014, Plaintiff traveled to Tennessee Colony, Texas, to begin training.[4]

In April 2014, Plaintiff began working at a TDCJ facility in Midway, Madison County, Texas.[5]  Plaintiff stated that she was "continually harassed" by fellow employees because she and other new hires had received bonus incentives to work at the prison.[6] Plaintiff alleged that she was asked questions of an "intrusive nature" and harassed by coworkers asking her age and marital status.[7] Plaintiff alleged that she felt harassed when coworkers "constantly" told her that other female officers had been fired for violating work policies.[8]  Plaintiff was "laughingly" told by other officers that she may be an officer who would conduct "nefarious acts" while on duty.[9]

---

[2]   See Doc. 32, Pl.'s Mot. for Relief p. 8.

[3]   See Doc. 20, Pl.'s Letter Correcting Compl. p. 8; Doc. 26, Mot. for Referral p. 3, TDCJ Officer Recruitment Bonus Contract.

[4]   See Doc. 32, Pl.'s Mot. for Relief p. 11.

[5]   See Doc. 20, Pl.'s Letter Correcting Compl. p. 4; Doc. 4, Order Transferring Case dated Dec. 29, 2014, p. 1.  Madison County is located in the Southern District of Texas.

[6]   See Doc. 20, Pl.'s Letter Correcting Compl. p. 4.

[7]   See id.

[8]   See id. p. 5.

[9]   See id.

On May 15, 2014, Plaintiff observed an officer violating safety regulations during food delivery to prisoners.[10]  Plaintiff requested to go home early after the incident and her request was granted.[11]

The next night, Plaintiff was training in a position where she was to open and close cell doors.[12]  An officer who was not wearing a name tag instructed her from a distance to open a particular cell, and not understanding him, Plaintiff opened an incorrect cell.[13]  The officer yelled at Plaintiff, called her "trainee" in front of the cell block, and accused Plaintiff of intentionally opening the wrong cell.[14]  Plaintiff and the officer then argued with one another.[15]  Plaintiff heard inmates threaten her and refer to her as "trainee."[16]

Plaintiff reported the incident to Lieutenant Jordan ("Jordan"), a supervisor with TDCJ.[17]  Plaintiff became emotional recounting the incident, and requested to go to her vehicle to

---

[10]    See id.

[11]    See id.

[12]    See id. p. 6.

[13]    See id.

[14]    See id.

[15]    See id.

[16]    See id.

[17]    See id. p. 7.

recover.[18]   Plaintiff was provided materials to make a report of
what had occurred and an officer delivered Plaintiff's report to
Jordan.[19]   Plaintiff then called Jordan by phone from her car and
stated she was too upset to return to work, and went home without
completing her shift.[20]   The following day, Plaintiff called the
assistant warden and resigned.[21]

Plaintiff filed a charge of discrimination with the Equal
Employment Opportunity Commission ("EEOC") on July 11, 2014,
stating that she believed TDCJ had violated her rights under Title
VII, the ADEA, and the Florida Civil Rights Act of 1992.[22]
Plaintiff's charge alleged that she was repeatedly referred to as
"trainee" and yelled at, and that she was questioned about her
age.[23] On November 20, 2014, the EEOC closed its file, stating that
it was unable to conclude there had been a violation of any
applicable law, and issued a right-to-sue letter.[24]

**B.  <u>Procedural Background</u>**

Plaintiff filed her complaint on December 18, 2014, in the

---

[18]    <u>See</u> <u>id.</u>

[19]    <u>See</u> <u>id.</u>

[20]    <u>See</u> <u>id.</u>

[21]    <u>See</u> <u>id.</u>

[22]    <u>See</u> Doc. 1 Pl.'s Compl., Charge of Discrimination p. 17.

[23]    <u>See</u> <u>id.</u>

[24]    <u>See</u> <u>id.</u> p. 19.

Eastern District of Texas.[25]  On December 29, 2014, a magistrate judge ordered that the case be transferred to the Southern District of Texas based on the venue provisions of 42 U.S.C. § 2000e-5(f)(3).[26]  Plaintiff objected to the order, but on May 22, 2015, the district court overruled Plaintiff's objections and ordered that the case be transferred.[27]

On July 13, TDCJ filed an unopposed motion for a more definite statement because pages were missing from Plaintiff's complaint.[28]  On August 12, 2015, Plaintiff wrote the court a letter with a corrected copy of her initial complaint.[29]

On September 14, 2015, Plaintiff filed a motion asking the court to refer the case back to the Eastern District of Texas.[30]

On November 13, 2015, TDCJ filed a motion to dismiss Plaintiff's claims.[31]  Plaintiff filed a motion for relief, again asking that this case be removed to the Eastern District of Texas on November 30, 2015.[32]  Defendant filed a response to Plaintiff's

---

[25]    See id. p. 1.

[26]    See Doc. 4, Order Transferring Case dated Dec. 29, 2014, p. 2.

[27]    See Doc. 5, Pl.'s Obj.; Doc. 6, Order dated May 22, 2015.

[28]    See Doc. 16, Def.'s Mot. for More Definite Statement.

[29]    See Doc. 20, Pl.'s Letter Correcting Compl.

[30]    See Doc. 26, Pl.'s Mot. for Referral.

[31]    See Doc. 31, Def.'s Mot. to Dismiss.

[32]    See Doc. 32, Pl.'s Mot. for Relief.

motion on December 3, 2015.[33]

## II.  Legal Standard

Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1), dismissal of an action is appropriate whenever the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1), 12(h)(3). The party asserting jurisdiction bears the burden of proof that jurisdiction does exist. Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001).  The court may exercise jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States" and over actions between citizens of different states when more than $75,000 is in controversy.  See 28 U.S.C §§ 1331, 1332.  The court may also exercise supplemental jurisdiction over claims brought under state law if they "form part of the same case or controversy" as the action over which the court has original jurisdiction.  28 U.S.C. § 1367.

Dismissal of an action is also appropriate whenever the complaint, on its face, fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A complaint need not contain "detailed factual allegations" but must include sufficient facts to indicate the plausibility of the claims asserted, raising the "right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Plausibility means that the factual

---

[33]      See Doc. 33, Def.'s Resp. to Pl.'s Mot. for Relief.

content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678.   A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." <u>Twombly</u>, 550 U.S. at 555.  In other words, the factual allegations must allow for an inference of "more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. at 678.

Rule 12(b)(6) allows dismissal of an action whenever the complaint, on its face, fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When considering a motion to dismiss, the court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts. <u>Harold H. Huggins Realty, Inc. v. FNC, Inc.</u>, 634 F. 3d 787, 803 n.44 (5th Cir. 2011)(quoting <u>True v. Robles</u>, 571 F. 3d 412, 417 (5th Cir. 2009)).

A complaint need not contain "detailed factual allegations" but must include sufficient facts to indicate the plausibility of the claims asserted, raising the "right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Plausibility means that the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678.  A plaintiff must

provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of actions." <u>Twombly</u>, 550 U.S. at 555.   In other words, the factual allegations must allow for an inference of "more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. at 678.

Additionally, a plaintiff who proceeds in forma pauperis is subject to sua sponte dismissal under 28 U.S.C. § 1915(e)(2) if pleading standards are not met.   <u>Hale v. King</u>, 642 F.3d 492, 497 (5th Cir. 2011).   Such complaint shall be dismissed "at any time" if the court determines the action "fails to state a claim on which relief may be granted" or "is frivolous or malicious."   28 U.S.C. § 1915(e)(2).

A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (internal quotations and citations omitted).

### III. Analysis

Plaintiff moves to transfer this case to the Eastern District of Texas.   TDCJ moves to dismiss Plaintiff's Title VII, ADEA, and contract claims.   It argues that Plaintiff's ADEA claims are abrogated by sovereign immunity, there was no contract of employment, and Plaintiff's constructive discharge and hostile work environment claims are too speculative to survive Rule 12(b)(6)

8

scrutiny.   In response, Plaintiff detailed new incidents where she was harassed by other female officers and argued that TDCJ fraudulently induced her to agree to the work contract because it made a practice of hiring "intolerant, non-assimilated" workers.[34]

**B.   ADEA Claim**

The court must decide a Rule 12(b)(1) motion before addressing any attack on the merits.   Ramming, 281 F.3d 158, 161 (5th Cir. 2001).   Pursuant to the federal rules, dismissal of an action is appropriate whenever the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); 12(h)(3).   Federal courts may exercise jurisdiction over cases only as authorized by the United States Constitution and the jurisdictional statutes.   Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); see also Howery v. Allstate Ins. Co., 243 F.3d 912, 916 (5th Cir. 2001).   The party asserting jurisdiction bears the burden of overcoming the presumption that the cause falls outside the court's limited jurisdiction.   Kokkonen, 511 U.S. at 377; Howery, 243 F.3d at 916, 919.   In considering such a motion, the court must take as true all uncontroverted factual allegations in the complaint.   John Corp. v. City of Houston, 214 F.3d 573, 576 (5th Cir. 2000).

TDCJ argues that it is a state agency and thus Plaintiff's ADEA claims are barred by sovereign immunity.   Sovereign immunity is the privilege of the sovereign not to be sued without its

---

[34]      See Doc. 32, Pl.'s Mot. for Relief p. 9.

consent.  <u>Virginia Office for Protection and Advocacy v. Stewart</u>,
563 U.S. 247, 253 (2011).  Federal courts may hear a person's suit
against the state only if the state has voluntarily waived or
abrogated its immunity.  <u>Id.</u> at 253-54.  In <u>Kimel v. Florida Board
of Regents</u>, 528 U.S. 62, 66 (2000), the Supreme Court found that
although Congress intended the ADEA to be applicable to the states,
Congress had not in fact abrogated sovereign immunity claims
asserted against the states.

TDCJ is an agency of the state and is subject to sovereign
immunity, absent waiver or abrogation.  The Fifth Circuit has found
that the State of Texas has not waived its immunity regarding ADEA
claims in the wake of the Supreme Court's holding in <u>Kimel</u>.  <u>See</u>
<u>Sullivan v. Univ. of Texas Health Science Center at Houston Dental</u>
<u>Branch</u>, 217 Fed. App'x 391, 395 (5th Cir. 2007).  The court
accordingly **DISMISSES** Plaintiff's ADEA claim for lack of
jurisdiction.

### B.  <u>Motion to Transfer Venue</u>

Plaintiff has twice asked the court to transfer venue to the
Eastern District of Texas.  Under 28 U.S.C. §1404(a), a case may be
transferred to another district court in which it could have been
brought "[f]or the convenience of parties and witnesses, in the
interest of justice. . ." or by consent.  28 U.S.C. § 1404(a).
Actions under Title VII are "governed by the special venue
provisions of the statute," not the general venue rules.  <u>Adams v.</u>

Cal-Ark Intern., Inc., 159 F. Supp. 2d 402, 409 (E.D. Tex. 2001) (citing 42. U.S.C. § 2000-5(f)(3)).  The Title VII venue provision states that venue is proper:

> in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3).

Title VII further provides that "[t]he provisions of section 2000e-5(f) through (k) of this title, as applicable, shall govern civil actions brought hereunder."  42 U.S.C. § 2000e-16(d).  "The provisions of 42 U.S.C. § 2000e-5(f)(3) are both mandatory and explicit."  Reynolds v. Geren, 2008 WL 4891159, *2 (E.D. Tex. Oct. 23, 2008); see also Kapche v. Gonzales, No. V-07-31, 2007 WL 3270393, *3 (S.D. Tex. Nov. 2, 2007).

Under all of the three venue provisions of section 2000e-5(f), venue is proper only in the Southern District of Texas.  While the court is sympathetic to Plaintiff's inconvenience, the court may not transfer an action to any district where it could not have been brought absent consent from all parties.  See 28 U.S.C. § 1404(a).  Here, TDCJ has not consented to transfer to the Eastern District.  Accordingly, the court **DENIES** Plaintiff's motion to transfer.

## C.  Constructive Discharge

11

TDCJ argues that Plaintiff has failed to state a Title VII discrimination claim because she has failed to allege the factual underpinnings for a constructive discharge claim. Plaintiff states in her complaint that she voluntarily resigned. A resignation is actionable under Title VII only if the resignation qualifies as a constructive discharge. Brown v. Kinney Shoe Corp., 237 F.3d 556, 566 (5th Cir. 2001). "A constructive discharge occurs when the employer makes working conditions so intolerable that a reasonable employee would be compelled to resign." Hunt v. Rapides Healthcare Sys., LLC, 277 F.3d 757, 771 (5th Cir. 2001).

"To prove a constructive discharge, a plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign." Id. To determine whether a reasonable employee would feel compelled to resign, the Fifth Circuit has considered the following:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger [or less experienced/qualified] supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement on terms that would make the employee worse off whether the offer was accepted or not.

Brown v. Bunge Corp., 207 F.3d 776, 782 (5th Cir. 2000). Constructive discharge requires a greater degree of harassment than would be required by a hostile environment claim. Benningfield v. City of Houston, 157 F.3d 369, 378 (5th Cir. 1998). Allegations of

12

discrimination alone are insufficient to support constructive discharge.  See Boze v. Branstetter, 912 F.2d 801, 805 (5th Cir. 1990).

Here, Plaintiff does not allege any of the factors outlined in Brown.  Plaintiff alleges that she resigned following an incident where she was yelled at by an officer after she did not understand that officer's instructions.  Viewing this incident in the light most favorable to her, the court does not find that this allegation is sufficiently connected to Plaintiff's gender to be actionable under Title VII.  Plaintiff also alleges that harassment was motivated by her status as a new hire; if true, this is not discrimination based on status in any protected class.

Plaintiff's allegations of discriminatory treatment consist of unwelcome comments about her bonus and intrusive questions regarding her age and marital status by trainers and coworkers. Standing alone, these allegations are insufficient to allege that working conditions were so intolerable that a reasonable employee would feel compelled to resign.

Because she has not met the standard of pleading for a constructive discharge, the court finds that Plaintiff's voluntary resignation precludes her Title VII discrimination claim.  The court accordingly finds that Plaintiff's Title VII sex discrimination claim should be **DISMISSED**.

## D.  Hostile Work Environment

13

TDCJ moves to dismiss Plaintiff's hostile work environment claim.  It argues that Plaintiff fails to state a claim that her working conditions were severely or pervasively hostile enough to alter the conditions of her employment.

A plaintiff may establish a Title VII violation by proving that sex discrimination has created a hostile or abusive working environment.  Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 66 (1986).  To establish a hostile work environment claim, a plaintiff must prove five elements: (1) the employee belonged to a protected class; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a "term, condition, or privilege" of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action.  Celestine v. Petroleos de Venez, 266 F.3d 343, 353 (5th Cir. 2001).

In order to affect a term, condition, or privilege of employment, the conduct must be sufficiently severe or pervasive "to alter the conditions of the victim's employment and create an abusive working environment."  EEOC v. Boh Bros. Const. Co., LLC, 731 F.3d 444, 452 (5th Cir. 2013).  To determine whether a workplace constitutes a hostile work environment, a court must consider: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

employee's work performance." <u>Ramsey v. Henderson</u>, 286 F.3d 264 (5th Cir. 2002).

Here, Plaintiff does not allege that harassment affected a term, condition, or privilege of her employment. Plaintiff alleges that she was asked if she was married or had any children, and that officers repeatedly joked about female officers engaging in relationships with prisoners. Plaintiff has failed to allege that these actions, even if she found them personally offensive, had any affect on her ability to work. As discussed in Plaintiff's constructive discharge claim, her voluntary resignation was based on her verbal confrontation with another officer, not sexual harassment. The court accordingly **DISMISSES** Plaintiff's hostile work environment claim.

### E.  **Breach of Contract**

Finally, TDCJ argues that Plaintiff's breach of contract claim must be dismissed. Plaintiff has attached the contract outlining her recruitment bonus. It states that TDCJ agreed to pay Plaintiff a one-time bonus of $4,000 in exchange for remaining at a full-time position for one year.[35] The contract additionally stated that if Plaintiff left her employment for any reason within three months she would refund the bonus, and that if she left after three months

---

[35]   <u>See</u> Doc. 26, Mot. for Referral p. 3, TDCJ Officer Recruitment Bonus Contract.

but before one year, she would re-pay a pro-rated bonus amount.[36]

Plaintiff signed the agreement on April 11, 2014.[37]   She voluntarily resigned her position on May 16, 2014, thirty-five days later.[38] While it is unclear from Plaintiff's complaint whether she is asserting her right to this bonus payment, it is clear from the terms of the agreement that Plaintiff is not entitled to any part of the $4,000 bonus, as she worked for TDCJ for less than three months before she resigned.   The court therefore **DISMISSES** Plaintiff's breach of contract claim.

### F.   Plaintiff's Motion for Relief

In addition to requesting a transfer of venue, Plaintiff's motion for relief contains an addendum to her original petition. Plaintiff details her first day in Tennessee Colony, Texas, and states that her agreement to work was based on false pretenses. Specifically, Plaintiff alleges that TDCJ should have informed her that she would be forced to work with "intolerant, non-assimilated" persons, and that she would not have taken the job had she known that hiring such individuals was TDCJ's policy.[39]   Plaintiff additionally relates her experience being assigned a living space during training in Tennessee Colony, Texas, stating that TDCJ's

---

[36]     See id.

[37]     See id.

[38]     See Doc. 20, Pl.'s Letter Correcting Compl. p. 7.

[39]     See Doc. 32, Pl.'s Mot. for Relief p. 9.

housing policy violated labor laws and that "more details and examples will be furnished during the appropriate forum."[40]

To the extent that Plaintiff appears to be attempting to allege new claims, such claims are improper as a matter of law. An EEOC charge is intended to place an employer on notice of the charges against it. <u>EEOC v. Shell Oil Comp.</u>, 466 U.S. 54, 77 (1984). A plaintiff is precluded from bringing claims outside the scope of the EEOC charge. <u>Anderson v. Sikorsky Support Servs., Inc.</u>, 66 F. Supp. 3d 863, 871 (S.D. Tex. 2014).

Plaintiff's charge of discrimination stated she had been subject to harassment since May 2014. Plaintiff's allegations regarding her hiring or initial training in March 2014 are outside the scope of her EEOC charge which only concerned the events occurring in May 2014.[41] These new claims found in Plaintiff's Motion for Relief (Doc. 32) are **DISMISSED** for failure to exhaust administrative remedies.

### IV. Conclusion

Based on the foregoing, the court **GRANTS** TDCJ's Motion to Dismiss Plaintiff's Complaint and **DENIES** Plaintiff's motions. Plaintiff's case against Defendant is **DISMISSED** for failure to state a claim and lack of jurisdiction.

---

[40]   <u>See</u> <u>id.</u> p. 11.

[41]   <u>See</u> Doc 1, Pl.'s Orig. Compl. p. 17, attaching her Charge of Discrimination wherein Plaintiff only complains of events which occurred in May 2014.

**SIGNED** in Houston, Texas, this <u>12</u><sup>th</sup>  day of May, 2016.

_____
U.S. MAGISTRATE JUDGE